# Earley's Appeal.

1. The purchase by a municipal corporation for the purpose of set-off of a judgment held by a third party against a creditor of the corporation is ultra vires.

2. Where it appeared that the real purpose of such purchase was to enable a third party to collect his claim through the corporation's right of set-off, *Held*, that it was a loan of the credit of the municipality within the ban of Art. IX., § 7 of the Constitution.

April 11th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from a decree of the Court of Common Pleas of *Luzerne county :* Of January Term 1883, No. 387.

This was an appeal by M. C. Earley, a judgment creditor of the borough of Pleasant Valley, from a decree of said court, making absolute rules to show cause why certain judgments held by said borough against Earley should not be set off against the judgment which Earley held against the borough.

The facts are fully recited in the opinion of this court and that of the common pleas, infra. RICE, P. J., delivered the following opinion :

The above judgments were formally assigned to the borough of Pleasant Valley by M. T. Hoban, on the 14th June 1881. On the same date, at a special meeting of the borough council, it was moved and carried that the judgments be purchased by the borough and that M. T. Hoban receive one hundred and fifty dollars therefor ; it does not appear in the depositions that the consideration has been paid. Mr. Hoban was at the time treasurer of the borough, and he testifies that his object in having the two judgments held against Mr. Earley assigned, is and was to collect the money due thereon, through the hands of the borough. As a part of the transaction he also gave to the officers the following paper : " Now, 14th day of June 1881, this is to certify that I, M. T. Hoban, do hold myself responsible for any costs incurred by the officers of the borough of Pleasant Valley, through ordinary expenses, that is, train fare, etc., etc., then the town council accept these conditions."

Prima facie at least the assignment of these two judgments

vested their ownership in the borough. Is there anything in‾ the testimony to show that the borough is not the real owner? We think not. Mr. Hoban does not testify that they were to be re-assigned to him on any contingency, and the object which he says he had in view cannot affect the title and ownership of the borough in the absence of proof of an agreement or understanding on its part that the transfer should be conditional. The agreement to indemnify the officers for any expenses incurred by them was entirely consistent with an actual sale. The right to offset judgments is an equitable, not a legal, right, and that the offset would be allowed was by no means certain. It might be that Earley would set up some superior equity to defeat it, and therefore, the officers of the borough had a right to make such terms guaranteeing them against costs and expenses, as the parties saw fit. It is quite apparent that the borough purchased the judgments for the purpose of offsetting them, but there was nothing inequitable in that, nor can it affect its title or ownership. It is equally clear that if the transfer was an absolute one, the equitable right of the borough cannot be affected by the price paid. Nor does it concern Earley that it was not a full consideration, which has not yet been paid.· From this consideration of the evidence we do not think the case comes within the principles announced in the authorities : Kessler *v.* Angle, 2 W. N. C. 23.

To set off one judgment against another is not a legal power nor is its exercise demandable of right : Burns *v.* Thornburgh, 3 Watts 78 ; Wellock *v.* Cowan, 16 S. & R. 318. It will therefore not be exercised where it would be against equity : Adams *v.* Wear, 3 Luz. Leg. Reg. 134; Ramsey's Appeal, 2 Watts 223 ; Horton *v.* Miller, 8 Wr. 256. The cross examination of Mr. Hoban was largely directed to the purpose of showing some equitable defence of Mr. Earley to these judgments, but it can hardly be argued that the examination was successful. So far as the record and testimony show, these judgments are in full life, and no grounds either in law or equity, appear why Mr. Earley should not pay them.

But finally it was urged that the action of the borough authorities in purchasing these judgments was ultra vires. If, as is contended by the defendant, the borough is simply acting as an agent for Mr. Hoban, to collect his debt, the action of the borough authorities would not be within their powers, and this court, in administering an equitable remedy, would not assist them in an unlawful exercise of power. But if, as we have found the fact to be, the borough purchased these judgments in good faith and owns them in its own right, we do not understand upon what legal principle the defendant can call in question the lawfulness of the transaction by which the borough be-

came the owner.　So far as the title is concerned, the contract has become an executed one, which we are not authorized to declare void in a collateral proceeding, and at the behest of a stranger to it, the abstract right of the borough to hold these judgments cannot well be questioned; and when we say that the contract is an executed one we mean that so far as third persons are concerned, its title to the judgment became as complete upon the execution of the assignment as it would have been had the consideration actually been paid.　Whether such a contract could be rescinded by either party before the consideration had passed is not the question raised here.　It might well be that it could, without giving to a stranger to it the right to impeach it.　For example, in the case of McGowan v. Budlong, 29 Sm. 470, the defendant took a note against his failing creditor for the purpose of using it as a set-off, he gave his own note therefor, with the agreement that it should not be collected if the set-off was not allowed.　In reversing the court below, where the set-off was rejected, Mr. Justice Paxson said, Abbott had a right to give the note to McGowan, and the latter's right to use it as "set-off against the maker does not depend upon the fact of its worthlessness.　The question of the consideration of the transfer could not have been raised by Budlong had McGowan sued him upon the note.　Nor can such question be raised when the note is offered as a set-off."　So, we think it might pertinently be said in this case that the sole question is whether there was an actual transfer of the judgments to the borough, and if there was, the defendant cannot attack the validity or sufficiency of the consideration, nor can he pertinently argue that its contract to pay it cannot be enforced.　The rules are made absolute.

　　The appellants took this appeal, assigning for error the action of the court in making the rules absolute.

　　*Garrick M. Harding* and *John McGahren*, for the appellant.—We claim that both the law and public policy forbid a municipal corporation to pay its debts by buying judgments against its creditors for the purpose of offset.　To say that the local civil authorities should possess the right to speculate with the moneys entrusted to them in this way would be a doctrine reprehensible in the highest degree, and pregnant with the most disastrous consequences to their constituencies.　Judicial sanction given to such a transaction would convert a borough municipality into a trading corporation or collection agency.　Some legislation is first required in order to confer upon borough authorities the right to buy judgments for the purpose of liquidating municipal debts.　The purchase of these judgments was an act ultra vires and therefore void.　The general

principle of law is that the agents or officers, or even city coun-
cil of a municipal corporation cannot bind the corporation by
any contract which is beyond the scope of its powers, or entirely
foreign to the purposes of the corporation, or against public
policy : Dillon on Munic. Corp. 381. And this general princi-
ple is strengthened by the Constitution of Pennsylvania, which
limits the powers of municipal officers to the " management and
administration of municipal affairs affecting the peace, good
order and general well being of the community." The Consti-
tution further prohibits municipalities from acquiring the char-
acteristics of a trading corporation instituted for purposes of
private gain : Art. IX. § 7.

*John T. Lenahan* and *James L. Lenahan*, for the appellee.
—If the borough had not paid Hoban a consideration for the
assignment, the case might fall within the constitutional pro-
vision referred to by appellant in his argument ; but in this
case the borough is a bona fide and absolute owner of the judg-
ments sought to be set off, and Earley cannot, in this collateral
proceeding, assail the title by which she acquired them : Ram-
sey's Appeal, 2 Watts 228 ; Blanchard *v.* Commonwealth, 6
Watts 309 ; Hamilton *v.* Brown, 6 Harris 87 ; Shryock *v.*
Basehore, 1 Norris 159.

Mr. Justice Gordon delivered the opinion of the court, May
21st 1883.

On the 11th of September 1879, a judgment was obtained
by Roger Wood, for the use of M. C. Earley, against the
borough of Pleasant Valley, in the sum of $476.93. On the
30th of August 1880, a mandamus was issued for the collec-
tion of this judgment, which was returned served upon M. T.
Hoban, the treasurer of said borough, who, for answer thereto,
alleged that there was no money in the treasury. It seems that
at the same time, Hoban, the treasurer, was the owner of two
judgments against Earley, numbered 378 and 379 of May term
1877, which, as it appears, turned out to be worthless, because
of the insolvency of the defendant. Then, on the 14th of June
1881, the borough council, at a special meeting, passed an ordi-
nance directing the purchase of said judgments from Hoban,
for the sum of $150. It does not appear, from this ordinance,
for what reason or purpose these judgments were purchased,
but Hoban, in his testimony, explains that he brought about
the arrangement, and made the assignment, for the purpose of
having them collected through the aid of the borough. It
further appears, that he agreed to indemnify it for any costs
and expenses that might be incurred by its officers in the con-
duct of this business. The meaning of this transaction is easy

[Earley's Appeal.]

of comprehension; the borough was to be used as an instrument for the collection of Hoban's judgments; hence, we find, that the next step which was taken, after the alleged purchase by the borough, was to obtain the rule to show cause why these judgments should not be set off against that which Earley was endeavoring to collect from the borough, and this rule, the court below, on the 16th of July, 1882, made absolute.

Granting, however, that these judgments were bought and paid for, in good faith, and for the sole purpose of subserving the interests of the borough, there yet remains this question to be disposed of; whence did this municipality acquire the power to purchase the outstanding judgments or other obligations of its creditors? We confess that even with the help of the argument of the learned counsel of the appellee, we have not been able to solve this proposition. It does seem to us, that if a borough, city, township or county, may buy up the judgments, bonds, or notes of its creditors, it may buy those of any other person, and may thus, in effect, become a broker or banker. But the evils which must, in the nature of things, arise from the exercise of such a power by the various municipalities of this commonwealth are so obvious, and the power itself so contrary to every idea that we, as a people, have hitherto entertained concerning the constitution of these public corporations, that we may set it down as certain that it accords not with the policy of our government, and that its exercise is, therefore, not allowable.

But, as we have already observed, the facts of this case demonstrate that the borough is here being used as a mere instrument for the collection of the whole, or part of Hoban's claim against Earley. Hoban, for this purpose, could not use the process of attachment, hence, as a substitute, a sale and assignment were resorted to, and in this manner he gets the borough's right of set-off; that is, he is credited with that right as against Earley. But as this is clearly a loan of the credit of the municipality, it comes within the ban of the seventh section of the ninth article of the constitution of 1874, and we are, therefore, compelled to pronounce against this carefully planned and ingenious scheme for the collection of a debt.

The decree of the court below is now reversed and set aside, and it is ordered that the appellee pay the costs.